UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THERESA KINNEY, | ) | CIV. 09-4051-KES |
| KATHERINE MOIR, | ) | |
| GLORIA TODD, | ) | |
| JAMES PETERS, | ) | |
| WILLIAM P. COLLINS, | ) | |
| RAY NELSON, and | ) | |
| THOMAS CALVILLO, on behalf of | ) | |
| themselves and all other similarly | ) | ORDER DENYING PLAINTIFFS' |
| situated individuals, | ) | MOTION FOR CLASS |
| | ) | CERTIFICATION AND DENYING |
| Plaintiffs, | ) | DEFENDANTS' MOTIONS TO |
| | ) | DISMISS AND TO STRIKE |
| vs. | ) | CLASS ALLEGATIONS AS MOOT |
| | ) | |
| SIOUXLAND UROLOGY | ) | |
| ASSOCIATES P.C., | ) | |
| SIOUXLAND UROLOGY CENTER, | ) | |
| L.L.C., | ) | |
| JOHN A. WOLPERT, M.D., | ) | |
| individually; | ) | |
| DAVID D. HOWARD, M.D., | ) | |
| individually; | ) | |
| PATRICK M. WALSH, M.D., | ) | |
| individually; | ) | |
| KENNETH E. McCALLA, M.D., | ) | |
| individually; | ) | |
| TIMOTHY G. KNEIB, M.D., | ) | |
| individually; | ) | |
| CRAIG A. BLOCK, M.D., | ) | |
| individually, and | ) | |
| THOMAS W. HEPPERLEN, M.D., | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Siouxland Urology Associates, Siouxland Urology Center,

Dr. Wolpert, Dr. Howard, Dr. Walsh, Dr. McCalla, Dr. Kneib, Dr. Block, and

Dr. Hepperlen, move to dismiss the amended complaint under Rule 12(b)(6) and to dismiss the claims against Dr. Walsh under Rule 12(b)(1). In the alternative, defendants move to strike the class allegations from the amended complaint. Plaintiffs, Theresa Kinney, Katherine Moir, Gloria Todd, James Peters, William P. Collins, Ray Nelson, and Thomas Calvillo, on behalf of themselves and all other similarly situated individuals, oppose defendants' motions and move to certify the class.

## BACKGROUND

The original complaint was filed on April 17, 2009. Docket 1. On June 19, 2009, defendants moved to dismiss the complaint under Rule 12(b)(6) and Rule 12(b)(1) and, in the alternative, to strike the class allegations. Docket 28; Docket 30. On July 31, 2009, plaintiffs moved for joinder of parties and filed an amended complaint. Docket 39; Docket 47. The amended complaint was filed "as a matter of course" pursuant to Rule 15(a)(1). Docket 47. The court then granted plaintiffs' motion for joinder of parties because defendants did not oppose the motion. Docket 60. As a result, Ray Nelson and Thomas Calvillo were added as class representatives, and Siouxland Urology Center and Dr. Hepperlen were added as defendants. Docket 60. The court then ordered a second amended complaint to be filed that identified the newly joined parties and any additional facts pertaining to those individuals. Docket 63. The second amended complaint was filed on April 8, 2010. Docket 64.

The second amended complaint alleges that from March 23, 2002, to January 23, 2009, defendants repeatedly used the same bags of irrigation fluid and plastic tubing on multiple patients that were designated for single-patient use only. It also alleges that other medical equipment was not properly disinfected. The second amended complaint specifically identifies seven plaintiffs who were exposed to the previously used medical equipment and improperly disinfected equipment while they were defendants' patients. It also alleges that 6,347 patients were exposed to previously used and improperly disinfected medical equipment.

As indicated above, there are three motions presently before the court. Defendants' motion to dismiss under Rule 12(b)(1)[1] and (6) and the motion to strike the class allegations would ordinarily be addressed first because doing so would potentially be more efficient. *See* Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, Managing Class Action

---

[1] Defendants argue that plaintiffs do not have Article III standing to sue Dr. Walsh as class representatives because none of them were treated by Dr. Walsh. Plaintiffs resist this argument. Standing issues generally need to be addressed first. *See Ortiz v. Fibreboard Corp*, 527 U.S. 815, 831 (1999) ("Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits."). Nonetheless, "it is appropriate to reach [the class certification issues] first" in this case because "[t]he class certification issues are dispositive" of whether plaintiffs have standing to sue Dr. Walsh in a class representative capacity. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (second alteration in original) (internal quotations omitted); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (explaining that "the class certification issues are . . . 'logically antecedent' to Article III concerns . . . and themselves pertain to statutory standing, which may properly be treated before Article III standing" (internal citations omitted)).

Litigation: A Pocket Guide for Judges 8 (2d ed. 2009) ("[T]he most efficient practice is to rule on motions to dismiss or for summary judgment before addressing class certification."). Many of the arguments surrounding the motion to dismiss and the motion to strike, however, appear to center on the issue of whether this case is appropriate for class certification.[2] Thus, the court's analysis will focus on plaintiffs' motion to certify the class while considering the relevant arguments associated with defendants' motions.

## ANALYSIS

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) (citation omitted). Whether class certification is appropriate is subject to the court's sound discretion. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (hereinafter *St. Jude I*) ("We review a district court's ruling granting or denying class certification for abuse of discretion." (quotations and citation omitted)).

### I. Rule 23(a) Requirements

Rule 23(a) establishes four requirements for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

---

[2] Defendants specifically incorporate their arguments in their motion to strike the class allegations into their response to plaintiffs' motion to certify the class.

>  (2) there are questions of law or fact common to the class;
>
>  (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and
>
>  (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements, which are generally referred to as the numerosity, commonality, typicality, and adequacy requirements, must all be satisfied. *St. Jude I*, 425 F.3d at 1119 ("To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a)[.]" (citations omitted)).

### A.    Numerosity

Plaintiffs allege in the second amended complaint that there are at least 6,347 potential claimants. Docket 64 at 10. Defendants do not dispute that this number satisfies the numerosity requirement. Defendants argue, however, that one of the identified possible subclasses that would represent those who have tested positive for contracting a disease would not satisfy the numerosity requirement because the subclass would only consist of 29 members. Because the issue before the court is whether the class as a whole should be certified, the court does not need to address this sub-issue at this time. Accordingly, plaintiffs have satisfied the numerosity requirement.

5

**B.    Commonality**

The commonality element "does not require that every question of law or fact be common to every member of the class . . . and may be satisfied . . . 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.' " *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citation omitted). Plaintiffs identify numerous common issues of fact and law, namely:

1. Whether defendants had a duty to apply that degree of skill, care and learning ordinarily possessed and exercised by surgery centers in similar circumstances;

2. Whether defendants breached the duty by failing to follow recognized standards for surgical procedures;

3. Whether defendants breached the duty by failing to follow the manufacturers' recommendations concerning the reuse of certain disposable medical equipment;

4. Whether defendants had a duty to disclose to plaintiffs and class members the intention to reuse disposable medical equipment and the risks of being exposed to blood-borne illnesses as a result of the reuse of such equipment;

5. Whether defendants breached the duty to disclose to plaintiffs and class members the intention to reuse disposable medical equipment and the risks of being exposed to blood-borne illnesses as a result of the reuse of such equipment;

6. What damages the class is entitled to recover for defendants' failure to follow industry standards of care;

7.  Whether the class must prove they were actually exposed to blood-borne illnesses as a result of defendants improperly reusing medical equipment before recovering emotional distress damages;

8.  If required to prove actual exposure, whether the class was actually exposed to blood-borne illnesses as a result of defendants improperly reusing medical equipment;

9.  If required to prove actual exposure, whether actual exposure is presumed because defendants failed to maintain adequate records to either prove or disprove actual exposure;

10. Whether the class is entitled to independent blood testing to determine whether they have been infected with any blood-borne illnesses;

11. Whether the class will require future blood tests to ensure they did not contract blood-borne illnesses as a result of defendants' conduct;

12. Whether the class's damages are compensable; and

13. The nature and extent of class-wide injury and the measure of damages for the injury.

Defendants argue that many of these claimed common issues of law and fact actually raise individual issues that make class certification improper. Defendants do not, however, directly refute plaintiffs' position that common issues of law exist. Thus, the court finds that the commonality requirement is satisfied.

### C. Typicality

"Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.' " *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citation omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* at 1540 (citations omitted). "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.' " *Id.* (citation omitted). Nonetheless, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006).

Plaintiffs argue that the claims of the class representatives stem from the same course of conduct. That is, plaintiffs argue that defendants harmed their patients by engaging in the same practice of reusing medical equipment. Defendants argue that the very nature of the claims preclude any finding of typicality. Stated differently, defendants argue that one person's claim for negligent infliction of emotional distress, intentional infliction of emotional distress, fraud, or failure to obtain informed consent, will be different from another person's identical claims because these claims necessarily include an individualized element that must be determined on a case-by-case basis.

In support of this argument, defendants cite the following language found in *Elizabeth M. v. Montenez*: "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."[3] 458 F.3d at 787 (citation omitted) (reversing trial court's class certification partly because "*each* assault claim initially requires proof that another employee of *one* residential facility violated that class member's substantive due process right to safety"). In support of this reasoning, the Eighth Circuit Court of Appeals relied on the decision in *Parke v. First Reliance Standard Life Insurance Co.*, 368 F.3d 999 (8th Cir. 2004).

In *Parke* the plaintiff alleged that the defendant "engage[d] in a practice of awarding long-term disability benefits to a claimant, then terminating or suspending those benefits without asking for or receiving evidence that the claimant's condition has changed." *Id.* at 1004. "The district court denied the motion for class certification because it concluded that [the plaintiff] could not meet the threshold requirement of typicality." *Id.* The Eighth Circuit Court of Appeals held that the trial court's refusal to certify the class on typicality grounds was proper even though the plaintiff "may be correct in her argument that [the defendant's] termination of

---

[3] The Eighth Circuit emphasized in a footnote that it did "not mean to suggest that institutional failure-to-protect claims are never suitable for resolution by class action." *Id.* at 787 n.4. "Depending on the circumstances, a more focused claim on behalf of a more uniform class may well be appropriate for class certification." *Id.* (citation omitted).

benefits before asking for or receiving updated medical records would often constitute a breach of [the defendant's] obligations" because "the question of whether a breach occurred remains a case-by-case determination." *Id.* at 1004-05 (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137-38 (3d Cir. 2000) ("affirming district court's denial of class certification for class of beneficiaries whose benefits were wrongfully delayed because 'the issue of liability itself requires an individualized inquiry into the equities of each claim.' ")).

    Here, the second amended complaint alleges numerous theories for relief: negligence; medical malpractice; intentional infliction of emotional distress; negligent infliction of emotional distress; battery; fraudulent concealment; fraudulent misrepresentation; failure to obtain informed consent; unjust enrichment; and exemplary damages. Most of these theories for recovery necessarily involve an individualized and case-by-case inquiry. For example, a claim of intentional infliction of emotional distress requires that "[t]he defendant's conduct, in fact, caused plaintiff to suffer severe emotional distress." *See* South Dakota Pattern Jury Instructions, Civil § 20-100-10. A claim of negligent infliction of emotional distress also requires that "the plaintiff suffered emotional distress." *Id.* at § 20-100-80. A battery claim requires a finding that "the plaintiff did not consent to the contact." *Id.* at § 20-160-20. The fraudulent concealment and fraudulent misrepresentation claims will likely require individualized scrutiny on the

10

issues of what representations were made and the degree to which the representations were relied upon. *See In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) (hereinafter *St. Jude II*) (emphasizing that "fraud cases often are unsuitable for class treatment" "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations" (citations omitted)). Similar case-by-case issues may also be present in medical malpractice and failure to obtain informed consent claims. *See, e.g., Kohn v. Am. Housing Found., Inc.*, 178 F.R.D. 536, 542-44 (D. Colo. 1998); *Harrigan v. United States*, 63 F.R.D. 402, 406-07 (E.D. Pa. 1974). Therefore, the court finds that this case, as presented by plaintiffs in their second amended complaint, will require a "case-by-case determination" as to whether a patient is entitled to any relief. *See Parke*, 368 F.3d at 1004-06. Thus, plaintiffs have failed to establish the typicality requirement for class certification.

Because a plaintiff must establish all four of the requirements of Rule 23(a) to be certified as a class, plaintiffs' motion under Rule 23(a) is denied.

## II.     Class Types Under Rule 23(c)(4).

Plaintiffs seemingly argue in the alternative for class certification under Rule 23(c)(4), which states that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."

*See also* Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 9 (2d ed. 2009) ("Though controversial and subject to conflicting rules in different circuits, issues class 'may enable a court to achieve economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action.' " (citation omitted)). Plaintiffs have not, however, identified any specific "issue classes" that should be certified under Rule 23(c)(4).

In *St. Jude II*, the Eighth Circuit Court of Appeals recognized that "there is a conflict in authority on whether [an issue] may properly be certified under Rule 23." 522 F.3d at 841 (citing cases). While not rejecting the possibility that such issue classes may be certified, the Eighth Circuit Court of Appeals stressed that "[e]ven courts that have approved 'issue certification' have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." *Id.* (citations omitted); *see also* Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 10 (2d ed. 2009) ("The test is whether the resolution of common issues advances the litigation as a whole, as opposed to leaving a large number of issues for case-by-case adjudication.").

In light of the numerous causes of action raised in plaintiffs' second amended complaint, there are too many individual issues surrounding the prosecution and defense of each claim that would need to be addressed on a case-by-case basis. For example, the intentional infliction of emotional distress and negligent infliction of emotional distress claims necessarily involve a case-by-case determination of whether an individual even experienced emotional distress. *See* South Dakota Pattern Jury Instructions, Civil §§ 20-100-10, 20-100-80. *See also In re Human Tissue Prods. Liab. Litig.*, 2010 WL 743922, at *2 (D.N.J. March 2, 2010) (refusing to certify the class because "the tort claims alleged [were] premised on emotional distress" that "present[ed] questions of individualized issues of liability"). The battery claim involves an individualized determination of whether the patient consented. *See* South Dakota Pattern Jury Instructions, Civil § 20-160-20. And the fraud claims would require a case-by-case determination of "what representations were received, and the degree to which individual persons relied on the representations." *St. Jude II*, 522 F.3d at 838 (stating that "fraud cases often are unsuitable for class treatment" (citations omitted)). To the extent that the fraud claims are used to toll the statute of limitations, this determination would have to be done **before** the jury could even determine liability. These varying theories for relief raise too many case-by-case issues that would need to be addressed before the damages issue could ever be addressed.

13

Because of the many individual issues surrounding the numerous theories for relief as are currently pleaded in the second amended complaint, the court finds that certifying various issue classes would not increase the efficiency of the litigation. *See St. Jude II*, 522 F.3d at 841; *see also In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (refusing to certify under Rule 23(c)(4) because "individual trials will still be required to determine issues of causation, damages, and applicable defenses"). Therefore, even if class certification under Rule 23(c)(4) is allowed, the court rejects plaintiffs' argument that such class certification of issues is proper in this case.

### III. Estoppel

Finally, plaintiffs also argue that defendants are estopped from arguing against class certification because they told individual class members that their claims could only be addressed in a class action lawsuit. In support of this argument, plaintiffs rely on a letter that told a patient that his claim was "part of a Class Action in the United States District Court of South Dakota." Docket 44, Ex. B at 1. While this representation might be relevant evidence for the court to consider with regard to whether the statute of limitations should be tolled, plaintiffs have not cited any law to support the argument that such a letter would bar defendants from subsequently resisting plaintiffs' motion to have the court certify a class. Thus, the court rejects this argument. *See* LR 7.1B.

## CONCLUSION

Plaintiffs' motion to certify the class is denied for the reasons expressed above. The court therefore orders plaintiffs to file a third amended complaint that complies with this order. Because plaintiffs will need to file a third amended complaint, defendants' motions to dismiss and to strike the class allegations are denied as moot.

Accordingly, it is

ORDERED that plaintiffs' second motion for certification of class (Docket 80) is denied;

IT IS FURTHER ORDERED that plaintiffs will file a third amended complaint no later than **March 15, 2011**.

IT IS FURTHER ORDERED that defendants' second motion to dismiss the second amended complaint (Docket 71) is denied as moot without prejudice;

IT IS FURTHER ORDERED that defendants' second motion to strike the class allegations (Docket 73) is denied as moot.

Dated February 28, 2011.

                            BY THE COURT:

                            /s/ *Karen E. Schreier*
                            KAREN E. SCHREIER
                            CHIEF JUDGE